UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALEJANDRO PONCE, JAMES RUSSELL, LUIS AGUIRRE, ROBERTO ENRIQUE GOMEZ MARROQUIN, and JUAN CARLOS QUINTANILLA, | Index No.: 20-cv-0905 |
| Plaintiffs, | **COMPLAINT** |
| - against - | *Jury Trial Demanded* |
| LA VILLE DELIVERY, INC.; LA VILLE IMPORTS, INC.; IVAN MARKOVIC (individually and in his official capacity); NADEZDA N. MARKOVIC (individually and in her official capacity), and any other related persons or entities, | |
| Defendants. | |

Plaintiffs Alejandro Ponce, James Russell, Luis Aguirre, Roberto Enrique Gomez Marroquin, and Juan Carlos Quintanilla (collectively, "Plaintiffs"), by and through their counsel, Bell Law Group PLLC, as and for their Complaint in this action against Defendants La Ville Delivery, Inc., La Ville Imports, Inc., Ivan Markovic, Nadezda N. Markovic, and/or any related entities (collectively, "Defendants"), hereby allege upon knowledge to themselves and upon information and belief as to all other matters as follows:

## NATURE OF THE CLAIMS

1. Plaintiffs bring this action on behalf of themselves and similarly situated individuals (collectively, "Plaintiffs") to recover for Defendants' violations of the retaliation provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.* and the New York Labor Law ("NYLL"), §§ 650, *et seq.*

2. In or around March 2019, Plaintiffs, through their attorneys, sent Defendants a demand letter explaining that Defendants had failed to pay them overtime and were engaged in other violations of the FLSA and NYLL.

1

3. In or around April 2019, after receiving the Demand Letter, Defendant Ivan Markovic told Plaintiff Quintanilla that he did not intend to keep Plaintiffs employed after the dispute over unpaid wages was resolved.

4. In or around May 2019, when initial negotiations between counsel were unsuccessful, Plaintiffs filed a lawsuit in this District, Ponce et. al. v. La Ville Delivery, Inc. et. al., Index No. 19-cv-3234 (BMC) ("Initial Lawsuit"), alleging violations of the FLSA and NYLL, including failure to pay overtime, failure to pay wages, and statutory violations of the NYLL notice provisions.

5. In or around July 2019, Plaintiffs and Defendants agreed to settle the Initial Lawsuit. On August 15, 2019, Judge Cogan granted approval of the settlement.

6. In or around September 2019, shortly after paying Plaintiffs the agreed-upon amount pursuant to the settlement agreement in the Initial Lawsuit, Defendants unlawfully retaliated against all five Plaintiffs for bringing the Initial Lawsuit by terminating their employment.

7. Terminating Plaintiffs' employment was only the last of a series of retaliatory actions Defendants took against Plaintiffs in response to and even after settling the Initial Lawsuit.

**JURISDICTION AND VENUE**

8. Pursuant to 28 U.S.C. §§ 1331 and 1343, the Court has subject matter jurisdiction over this action because the action involves federal questions regarding the deprivation of Plaintiffs' rights under the FLSA. Pursuant to 28 U.S.C. § 1367(a), the Court has supplemental jurisdiction over Plaintiffs' related claims under the NYLL and common law.

9. Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in this district because it is a judicial district in which at least one of the Defendants resides and a substantial part of the events or omissions giving rise to this action occurred in this district.

10. Plaintiffs' claims are properly consolidated as a single action because their claims involve the same Defendants, arise from the same nexus of facts and circumstances, and involve nearly identical issues of fact and law.

## PARTIES

11. Plaintiff Alejandro Ponce is a resident of the State of New York, Queens County who was employed by Defendants as a driver/warehouse worker from approximately October 2013 through approximately September 2019, when he was unlawfully terminated in retaliation for his participation in the Initial Lawsuit.

12. Plaintiff James Russell is a resident of the State of New York, Queens County who was employed by Defendants as a driver/warehouse worker from approximately October 2018 through approximately September 2019, when he was unlawfully terminated in retaliation for his participation in the Initial Lawsuit.

13. Plaintiff Luis Aguirre is a resident of the State of New York, Queens County who was employed by Defendants as a driver/warehouse worker from approximately May 2017 through approximately September 2019, when he was unlawfully terminated in retaliation for his participation in the Initial Lawsuit.

14. Plaintiff Roberto Enrique Gomez Marroquin is a resident of the State of New York, Queens County who was employed by Defendants as a driver/warehouse worker from approximately May 19, 2018 through approximately September 2019, when he was unlawfully

terminated in retaliation for his participation in the Initial Lawsuit and for filing a workers' compensation claim related to an accident he suffered on or around August 13, 2019.

15. Plaintiff Juan Carlos Quintanilla is a resident of the State of New York, Nassau County who was employed by Defendants as a driver/warehouse worker from approximately 2007 through approximately September 2019, when he was unlawfully terminated in retaliation for his participation in the Initial Lawsuit.

16. At all relevant times, each Plaintiff was an "employee" of Defendants within the meaning of all applicable statutes.

17. Upon information and belief, Defendant La Ville Delivery, Inc. is a New York corporation with a principal place of business at 263 Park Ave., Garden City Park, NY 11040.

18. Upon information and belief, Defendant La Ville Imports, Inc. is a New York corporation with a principal place of business at 115 Herricks Road, New Hyde Park, NY 11040.

19. Upon information and belief, Defendants La Ville Delivery, Inc., La Ville Imports, Inc., and any related entities (collectively, "La Ville" or "Corporate Defendants") are joint, integrated, related, and/or predecessor/successor enterprises for purposes of the Labor Law.

20. During the Relevant Period, La Ville was an "employer" within the meaning of all applicable statutes.

21. Upon information and belief, Defendant Ivan Markovic is an owner, principal and/or manager of La Ville who exercised substantial control over the operations and policies and practices of La Ville, including, but not limited to, personnel and compensation practices. Defendant Ivan Markovic held himself out as a principal of La Ville on official documents submitted to the State of New York.

22. Upon information and belief, Defendant Nadezda Markovic is an owner, principal and/or manager of La Ville who exercised substantial control over the operations and policies and practices of La Ville, including, but not limited to, personnel and compensation practices. Defendant Nadezda Markovic held herself out as a principal of La Ville on official documents submitted to the State of New York.

23. Individual Defendants Ivan and Nadezda Markovic were and remain "employers" within the meaning of all applicable statutes and laws.

## FACTUAL ALLEGATIONS

**Background**

24. Upon information and belief, La Ville is a wine importer and distributor.

25. Plaintiffs were employed by Defendants as drivers who drove and made deliveries in the State of New York in furtherance of Defendants' wine import and distribution business.

26. Plaintiffs regularly worked in excess of 40 hours per week and were not paid overtime for those hours until approximately March 2019, when Defendants began paying overtime after receiving the Demand Letter detailing Defendants' unlawful pay practices.

27. From the time Defendants first received the Demand Letter in or around March 2019 through the time Plaintiffs' employment was unlawfully terminated in September 2019, Defendant Ivan Markovic repeatedly engaged in retaliatory acts and made statements demonstrating retaliatory animus.

28. In or around April 2019, after receiving the Demand Letter, Defendant Ivan Markovic asked Plaintiff Quintanilla, in reference to the wage and hour dispute, "do you think I'm going to keep you guys working for me after this is over? And [will] you guys still want to work for me? I don't think it's going to work out for you guys to stay after this is over."

29. After counsel were unsuccessful at resolving the dispute informally, Plaintiffs filed the Initial Lawsuit in May 2019. Defendants continued to retaliate against Plaintiffs during the pendency of the Initial Lawsuit and after.

30. During the pendency of the Initial Lawsuit, Defendants substantially reduced Plaintiffs' hours multiple times, essentially reducing them to part-time employment, working substantially less than 40 hours per week. The reduction in hours was significantly greater than what would have been necessary to prevent Plaintiffs from working overtime.

31. In and around July 2019, Defendants failed to pay Plaintiffs holiday pay for the July 4 holiday, which they had done in previous years. When Plaintiffs inquired about the change, Defendant Ivan Markovic responded "you're not being nice to me, so why should I be nice to you?"

32. During the pendency of the Initial Lawsuit, Defendant Ivan Markovic told Plaintiffs Ponce and Quintanilla that he "can't have people working for the company who are trying to take me down."

33. During the pendency of the Initial Lawsuit, Defendant Markovic retaliated against Plaintiffs by ceasing to provide water, which he had previously provided.

34. Defendants further retaliated against Plaintiff Gomez by raising a frivolous challenge to his eligibility for workers' compensation when he was injured on the job on or around August 13, 2019.

35. The Initial Lawsuit was resolved in or around July 2019. This Court approved the settlement via electronic order on August 15, 2019.

36. In or around September 2019, within a few weeks of paying Plaintiffs pursuant to the settlement agreement that resolved the Initial Lawsuit, Defendants terminated Plaintiffs' employment.

37. Defendant Ivan Markovic attributed the termination to a restructuring of the business, but his prior statements and actions clearly demonstrate that his decision was motivated in whole or in part by retaliatory animus.

38. Defendants failed to provide Plaintiffs with written notice of their termination, in violation of New York Labor Law § 195(6).

39. Defendants refused to pay Plaintiffs accrued vacation time upon termination, claiming it was "use it or lose it", even though Plaintiffs had no chance to use it because they were terminated with no notice. Upon information and belief, Defendants had no "use it or lose it" policy in place with respect to vacation time prior to the Initial Lawsuit. Plaintiffs do not recall ever being notified of such a policy until after they were terminated.

**FIRST CAUSE OF ACTION**
**(Retaliation in Violation of 29 U.S.C. § 215)**

40. Plaintiffs hereby repeat and re-allege each and every allegation as contained in each of the preceding paragraphs as if fully set forth and contained herein.

41. The FLSA, 29 U.S.C. § 215(a)(3), makes it unlawful for any person "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding."

42. In direct violation of 29 U.S.C. § 215(a)(3), Defendants retaliated against Plaintiffs for filing their prior FLSA complaint by 1) substantially reducing their hours, essentially reducing Plaintiffs to part-time employment prior to terminating them; 2) threatening to terminate Plaintiffs'

7

employment upon conclusion of the lawsuit; 3) taking away the paid holiday on July 4, 2019 that had been paid in prior years; 4) taking away perks such as water that were previously provided in response to the Initial Lawsuit; 5) terminating Plaintiffs' employment shortly after paying the settlement; 6) refusing to pay out accrued leave time without having given Plaintiffs prior notice that their accrued paid leave would be forfeited in the event of termination; and 7) contesting Plaintiff Gomez's eligibility for workers' compensation in retaliation for his participation in the Initial Lawsuit.

43. The foregoing conduct of Defendants constitutes willful violations of the FLSA.

44. Defendants' violations of the FLSA have significantly damaged Plaintiffs, and entitles them to reinstatement of their employment and to recover all damages and other relief available by law and not released in the settlement of the Initial Lawsuit, including but not limited to the total amount of wages they would have earned but for Defendants' unlawful retaliatory termination, an additional equal amount in liquidated damages, compensatory damages, including damages for emotional distress and consequential damages, attorneys' fees and costs, pre- and post-judgment interest, and any other relief that shall be deemed just and proper.

## SECOND CAUSE OF ACTION
**(Retaliation in Violation of the New York Labor Law and its Implementing Regulations)**

45. Plaintiffs repeat and re-allege each and every allegation as contained in each of the preceding paragraphs as if fully set forth and contained herein.

46. NYLL § 215(1)(a) states that "[n]o employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company, or any other person, shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint to his or her employer, or to the commissioner or his or her authorized representative, or to the attorney general or any other person, that the

employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter, or any order issued by the commissioner (ii) because such employer or person believes that such employee has made a complaint to his or her employer, or to the commissioner or his or her authorized representative, or to the attorney general, or to any other person that the employer has violated any provision of this chapter, or any order issued by the commissioner (iii) because such employee has caused to be instituted or is about to institute a proceeding under or related to this chapter, or (iv) because such employee has provided information to the commissioner or his or her authorized representative or the attorney general, or (v) because such employee has testified or is about to testify in an investigation or proceeding under this chapter, or (vi) because such employee has otherwise exercised rights protected under this chapter, or (vii) because the employer has received an adverse determination from the commissioner involving the employee."

47. In direct violation of NYLL § 215 and its implementing regulations, Defendants retaliated against Plaintiffs for filing their prior FLSA and NYLL complaint by 1) substantially reducing their hours, essentially reducing Plaintiffs to part-time employment prior to terminating them; 2) threatening to terminate Plaintiffs' employment upon conclusion of the lawsuit; 3) taking away the paid holiday on July 4, 2019 that had been paid in prior years; 4) taking away perks such as water that were previously provided in response to the Initial Lawsuit; 5) terminating Plaintiffs' employment shortly after paying the settlement; 6) refusing to pay out accrued leave time without having given Plaintiffs prior notice that their accrued paid leave would be forfeited in the event of termination; and 7) contesting Plaintiff Gomez's eligibility for workers' compensation in retaliation for his participation in the Initial Lawsuit.

48. The foregoing conduct of Defendants constitutes willful violations of the NYLL.

49. Defendants' violations of the NYLL's anti-retaliation provisions have significantly damaged Plaintiffs, and entitles them to reinstatement of their employment and to recover the total amount of wages they would have earned but for Defendants' unlawful retaliatory termination, an additional equal amount in liquidated damages, payment of all accrued but unused vacation or other paid leave, compensatory damages, including but not limited to damages for emotional distress and consequential damages, attorneys' fees and costs, pre- and post-judgment interest, and any other relief that shall be deemed just and proper.

### THIRD CAUSE OF ACTION
**(Failure to Provide Written Termination Notices in Violation of NYLL § 195(6))**

50. Plaintiffs repeat and re-allege each and every allegation as contained in each of the preceding paragraphs as if fully set forth and contained herein.

51. NYLL § 195(6) requires covered employers, such as Defendants, to "notify any employee terminated from employment, in writing, of the exact date of such termination as well as the exact date of cancellation of employee benefits connected with such termination. In no case shall notice of such termination be provided more than five working days after the date of such termination."

52. Defendants failed to provide Plaintiffs with a compliant written notice of their termination within five days of their termination or at any time thereafter.

53. Plaintiffs were not exempt from the written notice requirement of NYLL § 195(6).

54. The foregoing conduct of Defendants constitutes willful violations of the NYLL and/or its regulations.

55. Defendants' violations of the NYLL have significantly damaged Plaintiffs and entitle them to recover damages of $5,000 per person affected, together with attorneys' fees and costs, pre and post judgment interest, and any other relief as the Court shall deem appropriate.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request that this Court:

A. Declare that the practices complained of herein are unlawful under applicable federal and state law;

B. Enjoin Defendants from continuing the unlawful practices identified herein;

C. Reinstate their employment with Defendants, which was unlawfully terminated in violation of the FLSA and NYLL anti-retaliation provisions;

D. Determine the damages sustained by Plaintiffs as a result of Defendants' violations of the FLSA, and award those damages against Defendants and in favor of Plaintiffs, including but not limited to back pay, front pay, compensatory damages, liquidated damages, payout of all unused vacation or other paid leave time, attorneys' fees and costs and such pre- and post-judgment interest as may be allowed by law, along with any other remedy this Court deems appropriate;

E. Determine the damages sustained by Plaintiffs as a result of Defendants' violations of the NYLL, and award those damages against Defendants and in favor of Plaintiffs, including but not limited to back pay, front pay, compensatory damages, liquidated damages, payout of all unused vacation or other paid leave time, attorneys' fees and costs and such pre- and post-judgment interest as may be allowed by law, along with any other remedy this Court deems appropriate;

F. Award Plaintiffs statutory damages in the amount of $5,000 per Plaintiff for Defendants' violations of Labor Law § 195(6), together with attorneys' fees and costs, pre and post judgment interest, and any other relief as the Court shall deem appropriate.

G. Enjoin Defendants from continuing the alleged retaliatory acts against Plaintiffs;

H. Enjoin Defendants from engaging in any further acts of illegal retaliation;

I. Enjoin Defendants from continuing their unlawful practices; and

J. Grant Plaintiffs such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues of fact and damages.

Dated: February 19, 2020
Garden City, New York

        Respectfully submitted,

        BELL LAW GROUP, PLLC

        By: _____/s/_____
        Laura R. Reznick, Esq.
        100 Quentin Roosevelt Boulevard
        Suite 208
        Garden City, NY 11530
        Tel: 516.280.3008
        Fax: 212.656.1845
        lr@belllg.com
        *Attorneys for Plaintiffs*